The Commonwealth of Pennsylvania at the suggestion and to the use of the Commonwealth Title, Insurance and Trust Company, Trustee for Mary Rodgers under the will of Benjamin Milnes, deceased, *v.* Chestnut Street National Bank and George H. Earle, Jr., as Receiver of the Chestnut Street National Bank, Appellants.

*Banks and banking—National banks—Attachment execution—Revised Statutes of the United States, sec. 5242.*

Section 5242 of the Revised Statutes of the United States does not prohibit the issue of an attachment execution against an insolvent national bank for property or money of a third person in the custody of the bank.

Argued Jan. 17, 1899. Appeal, No. 222, Jan. T., 1898, by garnishees, from order of C. P. No. 4, Phila. Co., June T., 1897, No. 604, discharging rule to vacate attachment execution. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to vacate attachment sur judgment.

The facts appear by the opinion of ARNOLD, P. J., which was as follows:

Judgment was entered against the defendant, James Long, on September 29, 1897, for $31,499, and on October 5, 1897, an attachment sur judgment was issued and served on the Chestnut Street National Bank as garnishee. To interrogatories the bank answered that Long was indebted to it in the sum of $17,831, with interest from April 22, 1897; that on September 20, 1897, it issued a duebill for $2,900, payable only through the clearing house the day after issue, and delivered the same to Long, he having closed his account with the bank. The duebill was not paid through the clearing house, but on November 3, 1897, which was nearly a month after the service of the attachment, Long surrendered the duebill to the bank to pay interest due on his indebtedness above mentioned, which interest was deducted, and the bank issued a new certificate, dated November 3, 1897, for $2,444.33, and delivered it to Long.

This duebill was passed through the clearing house and paid. The bank answered further that when the writ of attachment was served it held as collateral security for the indebtedness to it seventy-seven shares of the stock of the National Gas Trust of the value of $160 per share, and thirty-three shares of the capital stock of the Eighth National Bank of the value of $264 per share.

The Chestnut Street National Bank failed on December 23, 1897, and is now in the hands of a receiver, who has entered a rule to vacate and dismiss the attachment against that bank for want of jurisdiction in this court. In support of the rule the receiver relies upon section 5242 of the Revised Statutes of the United States, which is as follows:

" All transfers of the notes, bonds, bills of exchange or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, securities on real estate or of judgments or decrees in its favor; all deposits of money or bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void. No attachment, injunction or execution shall be issued against such association or its property before final judgment in any suit, action, or proceeding in any state, county or municipal court."

Were this attachment issued against the bank for a debt due by it, then the claim of the receiver to exemption from such attachment would be valid. But it is not for an indebtedness of the bank that an attachment was served on it. The attachment is for an indebtedness by Long, and the purpose of the attachment is not to obtain a judgment for a debt, but to inquire and determine whether it has any money or property of Long which is subject to an execution at the suit of his creditors. The purpose of the statute is to prevent one creditor of an insolvent national bank from obtaining a priority over others, and to preserve an equality between its creditors in the distribution of its assets. Therefore it is enacted that no attachment, injunc-

tion or execution shall issue against such association or its property before judgment, such, for instance, as a foreign attachment for a debt due by it. The statute does not prevent suits against a national bank in a state court. All it means is that no liens shall be acquired before judgment by attachment, injunction or execution before judgment. After judgment an execution may be issued against a national bank the same as against any other defendant. But this is not a suit against the bank. It is a suit now in judgment against Long, and the attachment is an execution against him, with a clause of scire facias to warn the bank to show cause why judgment should not be levied of Long's property in the possession of the bank. The bank admits that when the attachment was served it owed Long $2,900 on a clearing house duebill which was not paid in the usual course of such duebills; that Long presented the bill to the bank on November 3, 1897, and the bank paid it by giving Long credit for interest due by him and giving him a new bill. This was a month after the attachment had been served upon the bank. The bank had no right to deal with Long as it did. The plaintiff was entitled to that money and to a finding to that effect. Likewise the plaintiff is entitled to a finding that the bank holds the above-mentioned shares of stock subject to its lien for the indebtedness of Long to it, and the plaintiff is entitled to execution against that stock, subject to the lien of the bank. As to the money, we incline to think that as the bank is now insolvent the plaintiff can recover no more than a dividend, and is not entitled to any priority over the other creditors of the bank. As to the stock the plaintiff is entitled to a fi. fa. to sell that subject to the claim of the bank.

The foregoing reasoning has the support of a decision of the court of appeals of New York, which held that section 5242 of the Revised Statutes of the United States does not prohibit the issue of an attachment, injunction or execution against an insolvent national bank for property of a third person in the custody of the bank: Corn Exchange Bank v. Blye, 101 N. Y. 303.

Rule discharged.

*Error assigned* was the order of the court.

*Asa W. Waters* and *W. H. Addicks*, for appellants.—The effect of the act of congress is to deny the state remedy altogether, so

far as suits against national banks are concerned, and in this way it operates as well on the courts of the United States as on those of the states. Although the provision was evidently made to secure equality among the general creditors in the division of the proceeds of the property of an insolvent bank, its operation is by no means confined to cases of actual or contemplated insolvency. The remedy is taken away altogether, and cannot be used under any circumstances: Pacific National Bank v. Mixter, 124 U. S. 721; Garner v. Second National Bank of Providence, 66 Fed. Rep. 371; The Planters Loan & Savings Bank v. Berry, 91 Georgia, 264; Safford v. First National Bank (Vermont Sup. Ct.), 17 Atlantic Rep. 748; Central National Bank v. Richland National Bank, 52 Howard Practice, 136; Frank Rhoner v. First National Bank of Allentown, Pa., 14 Hun (N. Y. Sup. Ct.), 126; Freeman Manufacturing Co. v. National Bank of the Republic of Boston (Mass. Sup. Ct.), 35 N. E. Rep. 865, 866; Raynor v. Pacific National Bank, 93 N. Y. 371; Childs v. Digby, 24 Pa. 26; Drake on Attachments, sec. 452; 2 Wade on Attachment, sec. 332; Griel v. Loftin, 65 Ala. 591.

*Alfred D. Wiler,* with him *Crawford, Laughlin & Dallas,* for appellees, cited Central Nat. Bank v. Richland Nat. Bank, 52 How. Prac. 136; Raynor v. Bank, 93 N. Y. 371; Rhoner v. First Nat. Bank of Allentown, 14 Hun, 126; Freeman Mfg. Co. v. Nat. Bank of the Republic of Boston, 35 N. E. Rep. 865; Planters L. & S. Bank v. Berry, 91 Ga. 264.

PER CURIAM, January 30, 1899:

The judgment is affirmed on the opinion of the learned president of the court below.